946 F.2d 902
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 ZIONS FIRST NATIONAL BANK, N.A. as Indenture Trustee for
NOTEHOLDERS OF CFS KEEGAN'S GLEN I, LTD., Plaintiff-Appellee,
v.
Joseph N. BAILEY, Polly G. Bailey, J. Thomas Balzli; Marsha
D. Balzli; Walter E. Baumann; Lynette A. Baumann; Robert
Joseph Cater; Barbara Kay Cater; Michael P. Couch; Susan
M. Couch; Jobe N. Curtis; Kenneth R. Diddie; Pamela J.
Diddie; Gerald E. Gaige; Manoochehr Khatami; Steve F.
Montoya, Jr.; James P. O'Connell; Julia J. O'Connell;
Dave A. Roberts; Cathy M. Roberts; Kyoo Sang Ro; John R.
Sanders; Cynthia Ross Sanders; C.J. Sanders; Gwen B.
Sanders; Paul T. Siemers; Suri Y. Surainder; Gary
Symonds; Chester K. White, and Elsie D. White, Defendants,
Clayton Ching; David R. Hicks; Janet K. Hicks; Harry E.
Livingston; Sandra O. Livingston; Margaret Ann Schmitt;
Paul A. Stewart, Trustee for the Stewart Family Trust, and
John R. Thompson, Jr., Defendants-Appellants.
 No. 90-4087.
 United States Court of Appeals, Tenth Circuit.
 Oct. 16, 1991.
 
 Before McKAY, LOGAN and JOHN P. MOORE, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This is an appeal by certain investors in a bankrupt limited partnership from a judgment of the district court which held the investors liable for the payment of notes pledged by the partnership as security for loans to the partnership. The investors raised a number of defenses which the district court held unavailing upon cross motions for summary judgment. After a subsequent trial on one issue remaining after plaintiff's motion for summary judgment was partially granted, the district court entered judgment in full against the investors. Finding no error in the district court's analysis of the principal issues properly presented to it, we affirm. Because the record does not include findings of fact on one specific issue pertinent to the liability of one of the defendants, however, we reverse that judgment and remand for findings of fact.
 
 
 2
 Investors (defendants) purchased limited partnership interests in CFS Keegan's Glen I, Ltd. by paying a portion of their capital contribution in cash and the remainder in the form of promissory notes (Investors' notes) payable to Keegan's Glen. Keegan's Glen in turn borrowed $600,000 from twelve pension plans (Noteholders) in exchange for which Keegan's Glen executed indenture notes secured by the Investors' notes. The partnership and appellee, Zions First National Bank, then executed an indenture agreement by which the bank agreed to serve as indenture trustee for the Noteholders.
 
 
 3
 Keegan's Glen ultimately defaulted on the indenture notes, causing the bank to proceed against all the limited partners to foreclose upon the Investors' notes. While certain of the limited partners responded with payment, others refused to do so.
 
 
 4
 The Bank, in its representative capacity as trustee for the Noteholders, then commenced this action for collection.[1] The Investors asserted several counterclaims against the bank in its individual capacity.
 
 
 5
 Cross-motions for summary judgment were filed by the parties. Defendants asserted their right to judgment based upon a number of claims: alleged securities violations committed by Keegan's Glen; "failure of consideration, and/or frustration of partnership purpose, and/or ... breaches of fiduciary duty;" lack of ripeness; satisfaction; the statute of frauds; and invalidity of claim. Plaintiff asserted there were no material disputes of fact and that it was entitled to judgment upon the Investors' notes as a matter of law.
 
 
 6
 The court partially granted Zions' motion for summary judgment but reserved for trial the question of whether Keegan's Glen partnership interests were sold in violation of the securities laws and whether the Investors could assert such a violation as a defense to Zions' recovery on their notes. Following trial, the district court concluded § 29(c)(2) of the Securities Exchange Act, 15 U.S.C. § 78cc(c)(2), prohibited Investors from asserting the alleged securities violations as a defense because the Noteholders were without actual knowledge of the alleged violations at the time they extended their loans. The court consequently granted Zions judgment in full on the notes and awarded attorney fees and costs in accordance with the terms of the indenture trust.
 
 
 7
 Investors' primary strategy on appeal seems to be to obscure two facts. First, they refuse to acknowledge Zions appears in this action only in its representative capacity. Second, they blur the legal effect of the pledging of the Investors' notes as security for loans by the Noteholders.[2] The overall effect of the Investors' efforts is to complicate this case to the point of abject confusion.
 
 
 8
 There is only one valid issue before us applying to all Investors: Are they entitled to raise the alleged securities violations of Keegan's Glen, or are they estopped by § 29(c)(2) from doing so because the Noteholders had no knowledge of the alleged violations? The district court's holding on this issue moots most of Investors' arguments. Naturally, were we to reverse that holding, the issue of validity of the offering and the other defenses to recovery would then arise, but the efforts expended on appeal by Investors to persuade us that we should consider collateral issues has been a waste of precious time.[3]
 
 
 9
 It has been established in the record that Zions' interest in the collection of the Investors' notes is only as a representative of the beneficiaries of the indenture trust.[4] Although Investors argue that the "Zions, as Trustee for the Noteholders, stands in the shoes of the Partnership and can claim no greater rights against the Defendants than those that would exist if the general partners were before the Court," absolutely no authority is cited to support that statement.
 
 
 10
 Thus, the propriety of the district court's holding turns on the single issue of whether it correctly interpreted § 29(c)(2) to call into question the knowledge of the Noteholders rather than that of Zions. Under the facts of this case, we believe the answer is a resounding yes.[5]
 
 
 11
 We read the clear language of § 29(c)(2) as an unassailable directive to that conclusion. The statute says:
 
 
 12
 Nothing in this chapter shall be construed ... to afford a defense to the collection of any debt or obligation or the enforcement of any lien by any person who shall have acquired such debt, obligation, or lien in good faith for value and without actual knowledge of the violation of any provision of this chapter or any rule or regulation thereunder affecting the legality of such debt obligation, or lien.
 
 
 13
 The statute does not, by its own terms, apply only to holders in due course within the definition of the Uniform Commercial Code; to "a party who is essentially a stranger to the original transaction;" or to parties who "hold" a lien, as argued by the Investors. The only requirements of the statute are that the party asserting a lien or debt have acquired it (1) in good faith; (2) for value; and (3) without actual knowledge of a violation. We are unpersuaded by the Investors that any other requirements should be read into the statute. See Wilson v. Stocker, 819 F.2d 943, 948 (10th Cir.1987) ("When the terms of a statute are clear and unambiguous, that language is controlling absent rare and exceptional circumstances," quoting, Howe v. Smith, 452 U.S. 473, 483 (1981)).
 
 
 14
 In this case, it was the Noteholders who acquired the debt represented by the Investors' notes, not Zions. Thus, it would require a labored construction of § 29(c)(2) to apply it to the bank. No such construction is required to conclude the Noteholders are the parties to whom the protection of the statute is intended to apply. See Gunter v. Hutcheson, 674 F.2d 862, 874-76 (11th Cir.), cert. denied, 459 U.S. 826 (1982).[6]
 
 
 15
 One of the Investors, the Stewart Family Trust, argues summary judgment was improperly granted against it since its debt is made unenforceable by Utah Code Ann. § 70A-8-319 because the signature on the investment contract of the trustee, Dr. Paul A. Stewart, was forged.[7] Counsel argues the district court erred in holding Dr. Stewart had ratified the documents by making payments to the partnership. She contends under Utah law ratification cannot occur unless the principal has knowledge of all material facts and an intent to ratify. She urges that Dr. Stewart did not know his signature had been forged until his deposition was taken. The bank, however, points to several facts demonstrating Dr. Stewart's awareness of the consummated transaction. Specifically, the bank points to payments made by Dr. Stewart in 1983 and 1984 as required by the Investors' notes; the utilization of tax deductions arising from the investment; Dr. Stewart's testimony that he was "in the deal;" and that he never advised his sales representative that his signature was not genuine.
 
 
 16
 The record on this issue is unclear. The Stewart Family Trust asserts the trial court decided the issue of ratification on summary judgment; however, the order disposing of the motions is silent on the question. The findings of fact entered following trial state:
 
 
 17
 In connection with their purchase of limited partnership interests in Keegan's Glen, each of the Ching defendants [Investors] signed (or, as in the case of the Stewart Family Trust, ratified ) a "Security Agreement" that provided for jurisdiction and venue in the above entitled court, and a "CFS Keegan's Glen I, Ltd. Subscription Agreement for Limited Partnership Interests."
 
 
 18
 (Emphasis added). This is the only written reference to ratification that we can find, and the parties have provided us with no other citation in the record where the trial court made additional findings. Thus, while there certainly appears to be evidence that would support a conclusion of ratification by the Stewart Family Trust, without specific findings on the contested issues, we have no basis for determining whether the conclusion is erroneous. We believe, then, consistent with Fed.R.Civ.P. 52(a) we must partially remand this case for findings of fact on the issue of ratification.
 
 
 19
 We have, however, considered the remaining issues raised by the Investors and find them without merit. Accordingly, the judgment of the district court is AFFIRMED except for that portion of the judgment against the Stewart Family Trust. That portion of the judgment is REVERSED AND REMANDED for findings of fact on the issue of ratification.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 After suit was filed, a number of the formerly recalcitrant investors entered into settlements with the Bank until only the present eight defendants remain in the action
 
 
 [2]
 Investors argue: "There is something inherently wrong with enforcing contracts, otherwise illegal as violative of State and Federal registration laws, just because the perpetrator is bankrupt, dead and gone." Nonetheless, it is undisputed that the Noteholders advanced $600,000 to the partnership partially in reliance upon the security provided by the Investor notes. As we view this action, it is not one to enforce the investment contracts but to liquidate the security for Noteholders' loans
 
 
 [3]
 In addition to those arguments, Investors strongly contended at oral argument that Utah law should govern this case, citing Utah Code Ann. § 61-1-22(b). We have been unable to find where that issue was raised in the district court, and Investors' brief fails to show us as required by 10th Cir.R. 28.2(d)
 
 
 [4]
 Indeed, in comments from the bench in response to Investors' counsel, the trial judge stated:
 [W]hatever Zions may have done in this thing ... it's very clear to me that Zions is simply a collection system for these people that testified in this courtroom [Noteholders]. And that they are here as a trustee. And part of this PPM that we've talked so much about is that your client's notes have been assigned as security to pay these people that have loaned money."
 
 
 [5]
 The district court found that none of the Noteholders had knowledge of any violations by Keegan's Glen, and that finding has not been seriously challenged
 
 
 [6]
 In Gunter, the Eleventh Circuit held the Federal Deposit Insurance Corporation was entitled to assert § 29(c)(2) against note makers who claimed the notes should be violated for securities law violations. The FDIC had acquired the notes, which had been given to purchase an interest in a subsequently failed bank, through the process of liquidation
 
 
 [7]
 The Stewart Trust does not, however, cite § 70A-8-319(d) which states the sale of a security is enforceable without a signed writing if:
 the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.